IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAKUR W. STEWART f/k/a EVEROLD W. STEWART, <br><br> *Plaintiff*, <br><br> v. <br><br> JOHN COUGHLIN and the CITY OF DALLAS, <br><br> *Defendants*. | § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:20-CV-497-M |

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT
---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Shakur W. Stewart f/k/a Everold W. Stewart[1] ("Plaintiff" or "Stewart") files this Original Complaint against John Coughlin and the City of Dallas (collectively, "Defendants") and would respectfully show the Court the following:

**I.
INTRODUCTION**

1. This is a civil rights action brought under 42 U.S.C. § 1983 and arising from Coughlin's deliberate withholding of exculpatory evidence in a criminal prosecution of Plaintiff, which resulted in his conviction for murder. On the night of the murder, both witnesses whose later testimony formed the entire basis for the State's case against Plaintiff gave interviews which completely contradicted their trial testimony. These prior statements would have greatly undermined both witnesses' credibility and their testimony that implicated Plaintiff with the shooting. Because

1

the State had no other evidence that Plaintiff had anything to do with the crime, the jury would not have been able to find him guilty of murder beyond a reasonable doubt.

2. Despite knowing that the two witnesses' testimony provided the only basis for the case against Plaintiff, and knowing that the witnesses had previously made completely contradictory statements, Defendant Coughlin—the Dallas Police detective in charge of this murder investigation—withheld the existence of those prior contradictory statements from prosecutors and the defense. Plaintiff's conviction was ultimately overturned because of this *Brady* violation on September 16, 2019, but not before he spent more than three years in prison and nearly twenty years on parole.

3. Additionally, the City of Dallas caused this violation to occur because it completely failed to either train its officers regrading their duties under *Brady* or implement policies to ensure exculpatory evidence was turned over to prosecutors.

## II.
## PARTIES

4. Plaintiff Shakur Stewart is a resident of Toronto, Ontario.

5. Defendant John Coughlin is a resident of Rockwall, Texas and may be served at his place of business, Corporate Security Solutions—Texas, 5501 LBJ Freeway, Suite 800, Dallas, TX 75240.

6. Defendant City of Dallas ("the City") is a municipality that may be served through its City Secretary, Bilierae Johnson, at Dallas City Hall, 1500 Marilla St., Room 5 D South, Dallas, TX 75201.

---

[1] Plaintiff's given name at birth was Everold Wayne Stewart, and that was the name he was prosecuted under; however, he has since had his first name legally changed to Shakur.

2

## III.
## JURISDICTION AND VENUE

7. The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983 and this action arises under the Constitution, laws, or treaties of the United States.

8. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 as this is the judicial district in which at least one Defendant resides and in which a substantial part of the events or omissions giving rise to the claim occurred.

## IV.
## FACTS

### *The Murder Conviction*

9. Plaintiff Stewart was convicted of murder in 1988. Stewart was completely innocent of the crime, and in fact was nowhere near the scene of the shooting. He testified as such during the punishment phase of his trial. Long after being released from prison, and even after being discharged from parole, Plaintiff consistently maintained his innocence and fought for years to have his conviction overturned.

10. The case against him relied entirely on the testimony of two witnesses; there was no other evidence of any kind linking Plaintiff to the crime.

11. One of the witnesses, Leroy Davidson, testified at trial that he was with Michelle Chin outside an apartment building in Dallas on August 13, 1987 when two groups of people began shooting at each other and hit Chin with a stray bullet, killing her. Davidson further testified that he saw the shooters and that Plaintiff—whom he knew—was one of them.

12. However, Davidson had been interviewed by Defendant Detective John Coughlin, the lead Dallas Police Department investigator assigned to Chin's murder, on the night it occurred. Defendant Coughlin took notes of Davidson's statements during this interview.

3

13. These notes show that Davidson made two conflicting statements to Coughlin about the perpetrators, both of which contradict his later trial testimony that he saw Stewart shoot Chin. First, he told Coughlin that he <u>did not see the shooters</u>.

14. Later that same night, he indicated to another investigator that he did see the shooting, and picked out a man named David Matthews from a photo lineup as the person who shot Chin.

15. These statements made by Davidson immediately after the murder directly contradict what he said at trial—that he saw the shooters and that Plaintiff was the one who shot Chin.

16. A second witness, Simon Gemda, also testified at the trial. He testified that he had driven Davidson and Chin in his cab to the apartment complex where she was shot. He further testified that he was at the location when the shooting occurred and had seen Plaintiff running nearby and holding a gun.

17. However, Gemda had also been interviewed the night of the murder. The handwritten interview notes from that night indicate that he told investigators that he was <u>two blocks away</u> when he heard shots and returned to the apartment complex. He did not say anything to the investigators about seeing anyone there with a gun, and did not mention Plaintiff in any context.

18. As with Davidson, Gemda's prior statements directly contradicts his testimony at trial that he saw Plaintiff at the scene with a gun.

19. The jury relied entirely on the testimony of these two witnesses in reaching a guilty verdict; there was <u>no other evidence</u> linking Plaintiff to the crime.

20. Coughlin deliberately withheld the prior statements of both witnesses. This is evidenced by three things: (1) he omitted both inconsistent statements from the prosecution report that he prepared; (2) he did not include the handwritten interview notes when he turned over the investigative file to prosecutors; and (3) he did not mention the statements to prosecutors in discussions they had prior to trial.

4

21. In other words, Coughlin communicated with the district attorney about the case on multiple occasions and in multiple ways. He had numerous opportunities to tell the prosecutor about what Davidson and Gemda had said, but instead he repeatedly hid the fact that both witnesses had stated that they did <u>not</u> see anything that would link Plaintiff to the shooting.

22. In a sworn affidavit submitted for Plaintiff's writ case in 2018, prosecuting attorney Robert Dark said, "I did not receive a copy of these notes and did not see them when I was involved in this case. I was also not aware and was never told that these two State's witnesses had made these statements to the police investigator."

23. Similarly, Stewart's defense counsel, Royce West, has sworn in an affidavit that he had no knowledge of the witnesses' prior inconsistent statements.

24. By the time Coughlin filed the prosecution report, he was aware that Davidson would testify that he saw Plaintiff shoot at Chin.

25. There is no doubt about this, because the prosecution report Coughlin filed in Stewart's case listed Davidson as the only witness, and its description of the testimony he would give reflected the testimony that Davidson ultimately did give at trial. Namely, it said that Davidson could testify "that . . . he positively identified [Stewart] from a photo lineup as one of the three suspects he saw shooting at [Chin]."

26. Again, this is flatly contradicted by his prior conflicting statements that (1) he had not seen any of the shooters, but rather had only heard their voices, and then (2) that he saw David Matthews shoot Chin.

27. By the time he wrote the prosecution report and knew that the entire case would revolve around Davidson's eyewitness identification of Plaintiff as the shooter, any reasonable officer would have known that his prior contradictory statements were critical impeachment evidence that must be disclosed to the prosecutors and therefore, to the defense.

28. The jury was only able to find Plaintiff guilty beyond a reasonable doubt because of Davidson's and Gemda's uncontroverted testimony at trial. Had the directly contradictory statements from their initial interviews been introduced, there is more than a reasonable probability that the jury would not have reached a guilty verdict.

29. In sum, this was not a complex case by any means. The entire universe of the prosecution's evidence against Stewart was comprised of two witnesses: one claimed at trial to have seen Stewart at the scene with a gun, and the other claimed at trial to have seen Stewart shoot Chin.

30. Defendant Coughlin was very familiar with the case, having led its investigation from start to finish. He knew that the testimony of Davidson and Gemda was absolutely critical to prosecuting Stewart for the crime. Without that testimony, there was no case.

31. As a veteran police detective, Coughlin also knew that the statements made by Davidson and Gemda in their interviews on the night of the murder—that they had not seen Stewart that night—would completely undermine their testimony and prevent a jury from finding Stewart guilty beyond a reasonable doubt.

32. In fact, this was not the first time that Coughlin had suppressed evidence to convict a suspect who was later exonerated. In 2012—after spending 31 years in prison as an innocent man—Rickey Dale Wyatt successfully had his 1981 conviction for rape overturned, based largely on Coughlin's suppression of several pieces of material, exculpatory evidence. The district court's findings of fact went so far as to conclude that Coughlin had additionally lied in court in an attempt to account for a 35-to-55-pound discrepancy between Wyatt and the actual perpetrator (which discrepancy was also the subject of some of the suppressed evidence). The court politely referred to Coughlin's testimony as "not credible." *See Ex Parte Rickey Dale Wyatt*, Cause No. F81-01187-PK, Criminal District Court No. 4, Dallas County*; Rickey Dale Wyatt v. City of Dallas, et al.*, 3:14-cv-01717-M-BF, Northern District of Texas, Dallas Division, Doc. 27 (First Amended Complaint).

Wyatt sued Coughlin and others in this Court, but voluntarily dismissed the suit when he accepted statutory compensation from the State of Texas.

33. By Defendant Coughlin's own admission, the City of Dallas, though its Police Department, did not train its detectives in any way regarding their duties under *Brady*.

34. Coughlin's testimony also indicates that the City completely failed to institute any policies to ensure that all exculpatory evidence was delivered to the district attorney's office and copied, so that it could be produced to criminal defendants.

35. In other words, the City left it completely to the discretion of the officers as to what evidence they brought to the attention of prosecutors.

36. Had the City properly trained Coughlin or instituted policies enforcing complete disclosure of exculpatory evidence, Coughlin would have known that he was required to make Robert Dark aware of the fact that two key witnesses had originally made statements that completely contradicted the testimony they were going to give at trial.

### *The Exoneration*

37. Plaintiff was incarcerated for his homicide conviction from January 7, 1988 until December 3, 1990, when he was released on parole. Plaintiff was then subject to the conditions of parole until he was discharged on October 2, 2012.

38. Plaintiff filed his second application for a writ of habeas corpus on February 16, 2017.

39. As part of the investigation of that case it was discovered that Coughlin's investigative file on Stewart's case contained information that was not included in the District Attorney's trial file. Namely, the DA's trial file was missing several pages of handwritten notes kept by Defendant, including notes from the initial interviews of Davidson and Gemda from the night of the murder.

40. As described above, these interview notes contain statements by Davidson and Gemda that clearly contradict their trial testimony.

41. Had the jury known of these statements, it would have cast serious doubt on Davidson's identification of Plaintiff as the shooter who killed Michelle Chin, and Gemda's placement of Plaintiff at the scene carrying a gun.

42. Under the requirements of the Due Process Clause of the Fourteenth Amendment, as first recognized in 1963 in *Brady v. Maryland*, it is well established in the Fifth Circuit and across the country that police officers have a duty to turn over any material exculpatory information related to the prosecution of a criminal suspect to the district attorney, who in turn must disclose that information to the defense.[2]

43. A *Brady* violation occurs when (1) evidence is suppressed by the State, (2) the suppressed evidence is favorable to the accused, and (3) the suppressed evidence is material, meaning that "there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different."[3]

44. Both Royce West (Plaintiff's criminal defense counsel) and Robert Dark (prosecuting attorney) submitted affidavits saying that they had no knowledge of the handwritten notes or the statements described within them. Both described the evidence as exculpatory, and Dark further stated that the fact that the notes were in Coughlin's investigative file but not the DA's file "indicates that the police investigator did not give them to the District Attorney's office."

---

[2] *E.g.*, *Brown v. Miller*, 519 F.3d 231, 237–38 (5th Cir. 2008) ("The Supreme Court held in *Brady v. Maryland* that a criminal prosecutor's failure to disclose exculpatory evidence to a criminal defendant violates a defendant's right to a fair trial. A police officer's deliberate concealment of exculpatory evidence violates this same right, and can give rise to liability under § 1983. By 1967, a public official's concealment of exculpatory evidence was a constitutional violation in this circuit.") (internal citations omitted); *see also Hernandez v. Terrones*, 397 Fed. Appx. 954, 971 (5th Cir. 2010) ("Impeachment as well as exculpatory evidence fall within *Brady's* purview.") (citing *U.S. v. Bagley*, 473 U.S. 667, 676 (1985)); *Giglio v. U.S.*, 405 U.S. 150 (1972) (holding that the nondisclosure of an alleged promise to refrain from prosecuting a key witness in exchange for his testimony violated the requirements of *Brady*).
[3] *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

8

45. Ultimately, when faced with the facts outlined in this Complaint, the Dallas District Attorney's office agreed that a *Brady* violation had been committed, and that Plaintiff was entitled to relief.

46. Judge Robert Burns of Dallas County Criminal District Court #1 found that the notes and the statements they contained were favorable to Plaintiff, material to his conviction, and had been suppressed by the State.

47. As such, the court found that a *Brady* violation had occurred and recommended Plaintiff's conviction be vacated.

48. Plaintiff's conviction was subsequently set aside by the Texas Court of Criminal Appeals on November 21, 2018. Mandate was issued by the Court of Criminal Appeals on December 17, 2018, and the District Court dismissed the prosecution on September 16, 2019.

## V.
## CAUSE OF ACTION UNDER 42 U.S.C. § 1983: VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

49. All preceding paragraphs are incorporated here by reference.

50. At all times material to this Complaint, Defendant acted under color of the statutes, customs, ordinances, and usage of the State of Texas, Dallas County, and the City of Dallas.

51. Under the requirements of the Due Process Clause of the Fourteenth Amendment, as first recognized in 1963 in *Brady v. Maryland*, it is well established in the Fifth Circuit and across the country that police officers have a duty to turn over any material exculpatory information—including impeachment evidence—that is related to the prosecution of a criminal suspect to the district attorney, who in turn must disclose that information to the defense.[4]

52. A *Brady* violation occurs when (1) evidence is suppressed by the State, (2) the suppressed evidence is favorable to the accused, and (3) the suppressed evidence is material,

---

[4] *See* fn.2 *supra*.

meaning that "there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different."[5]

53. Police investigators interviewed Leroy Davidson and Simon Gemda on the night of Michell Chin's murder. Both gave statements that were exculpatory to Plaintiff in his criminal trial. In particular, these statements directly contradicted testimony made by the same two witnesses at trial that placed Plaintiff at the scene carrying a gun and/or identified him as the person who shot Michelle Chin.

54. Defendant interviewed Davidson himself, and was aware of the content of Gemda's interview. Handwritten notes verified the existence of the statements made in these interviews, described in detail above, which constituted exculpatory and/or impeachment evidence.

55. Defendant did not communicate the content of these statements to the district attorney, and therefore, the information was not given to Plaintiff's defense counsel.

56. Moreover, the handwritten notes were not turned over to the district attorney, nor was the district attorney notified of their existence.

57. Furthermore, Defendant omitted the same information from the prosecution report for Plaintiff's case, instead only saying that Davidson would testify that he saw Plaintiff shoot Chin.

58. As found by the court that reviewed Plaintiff's application for a writ of habeas corpus, (1) the evidence of the witnesses' initial statements was suppressed, (2) this evidence was favorable to Plaintiff's defense, and (3) there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different.

59. Moreover, Defendant's suppression of the statements was deliberate or with reckless disregard for Plaintiff's rights. Defendant was well aware that Davidson's identification of Plaintiff as the shooter and Gemda's placement of Plaintiff at the scene with a gun were critical to finding

---

[5] *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

Plaintiff guilty beyond a reasonable doubt—in fact, it was the only evidence the prosecution had against him—and that the prior inconsistent statements would seriously undermine that testimony. Nonetheless, Defendant (1) did not turn over the interview notes to the prosecutors; (2) did not mention the statements to prosecutors in discussions they had prior to trial; and (3) did not mention the statements in the prosecution report.

60. Therefore, Defendant violated Plaintiff's Fourteenth Amendment Due Process rights by deliberately, or with reckless disregard for Plaintiff's rights, suppressing the statements made by Davidson and Gemda in their interviews on the night Michelle Chin was murdered.

61. Alternatively, should the Court find that the described conduct violated another of Plaintiff's rights, such as the Fourth Amendment right against unlawful seizure or the Sixth Amendment right to a fair trial, such violations are expressly invoked here.

62. By his actions and/or inactions as described above, Defendant has violated 42 U.S.C. § 1983 and the constitutional provisions cited in this Complaint.

### *Municipal Liability*

63. All preceding paragraphs are incorporated here by reference.

64. A municipality may be liable when it has completely failed to train its employees, or implement appropriate policies, regarding recurring situations that present an obvious potential for violation of constitutional rights, such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train.

65. By 1967, it was clearly established in the Fifth Circuit that police officers have a constitutional duty under *Brady* to disclose exculpatory evidence to prosecutors.

66. The Dallas City Council (or in the alternative, the Chief of Police) was the City's policymaker for its law enforcement officers, and was fully aware of and responsible for the policies of the Police Department regarding disclosing exculpatory evidence to prosecutors.

67. By Defendant Coughlin's own admission, the City of Dallas, though its Police Department, did not train its detectives in any way regarding their duties under *Brady*.

68. The City also completely failed to institute any policies to ensure that all exculpatory evidence was delivered to the district attorney's office and copied, so that it could be produced to criminal defendants.

69. There was an obvious need for such training because detectives like Defendant Coughlin, who are not required to have had any legal education, are faced with constantly recurring situations in which they must decide what information, from that which they have gathered in an investigation, is to be turned over to the district attorney's office.

70. Failure to correctly identify and turn over material exculpatory evidence will inevitably lead to the violation of the rights of criminal defendants.

71. The City of Dallas's complete failure to train its officers in their duties under *Brady*, or institute policies to ensure all exculpatory evidence was turned over to the district attorney's office, was the moving force behind Coughlin's failure to disclose the exculpatory evidence described above.

72. Coughlin's failure to disclose that information in turn violated Plaintiff's constitutional rights and resulted in his wrongful conviction.

73. Therefore, the City's complete failure to train its officers and/or promulgate appropriate policies as described above violated Plaintiff's constitutional rights and caused the harms described herein.

## VI.
## DAMAGES

74. As a direct and proximate result of the above described acts and omissions of Defendant, Plaintiffs has suffered serious damages. Accordingly, Plaintiff seeks to recover all actual, compensatory, and exemplary damages which have resulted from Defendant's above described conduct. These damages include, but are not necessarily limited to, the following:

- a) Plaintiff's physical suffering;

- b) Plaintiff's loss of liberty guaranteed by the Fourth, Fifth, and/or Fourteenth Amendments;

- c) Plaintiff's mental pain and anguish, both past and future;

- d) Lost wages and earning capacity, both past and future;

- e) Pre- and post-judgment interest;

- f) Pursuant to 42 U.S.C. § 1988, Plaintiff is also entitled to recover, and hereby requests, the award of reasonable attorneys' fees and costs of court.

- g) Out-of-pocket costs associated with Plaintiff's efforts to clear his name, including all legal and investigation fees; and

- h) Punitive damages.

## VII.
## JURY DEMAND

75. Plaintiff demands a trial by jury.

## VIII.
## PRAYER

76. Plaintiff Stewart requests that Defendant John Coughlin be summoned to appear and answer and that upon final trial or hearing, a judgment be entered in favor of Plaintiff and against the Defendant for:

- a) Compensatory and actual damages in an amount deemed sufficient by the trier of fact;

- b) Exemplary and/or punitive damages;

  c)  Reasonable and necessary attorneys' fees under 42 U.S.C. § 1988;

  d)  Costs of court;

  e)  Pre-judgment and post-judgment interest at the highest rate permitted by law; and

  f)  All such other and further relief, at law or in equity, to which he may show himself to be justly entitled.

Respectfully submitted,

By:  /s/ *Don Tittle*
  Don Tittle
  State Bar # 20080200
  don@dontittlelaw.com
  Roger Topham
  State Bar # 24100557
  roger@dontittlelaw.com
LAW OFFICES OF DON TITTLE
6301 Gaston Avenue, Suite 440
Dallas, Texas 75214
214/522-8400
214/389-1002- FAX

**14**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served upon counsel for Defendants by electronic service via the Court's CM/ECF system and/or via email on this the 28th day of September, 2020:

Lindsay Gowin
Senior Assistant City Attorney
lindsay.gowin@dallascityhall.com
Devin Alexander
Assistant City Attorney
devin.alexander@dallascityhall.com

 7DN Dallas City Hall 249
1500 Marilla Street 250
Dallas, Texas 75201 251
Telephone: 214-670-3519
Telecopier: 214-670-0622

*Attorneys for Defendants*

                                        */s/ Roger Topham*
                                        Roger Topham